UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KERRY D. MILLER,

        Petitioner,         Case No. 1:12-cv-370

v.        Honorable Janet T. Neff

JOHN PRELESNIK,

        Respondent.
_____/

**OPINION**

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Kerry D. Miller presently is incarcerated at the Richard A. Handlon Correctional Facility. Petitioner originally was charged with five felony counts: (1) producing child sexually abusive materials, MICH. COMP. LAWS § 750.145c(2); (2) using a computer to commit a felony with maximum imprisonment of 20 years to life, MICH. COMP. LAWS § 752.797(3)(f); (3) possessing child sexually abusive material, MICH. COMP. LAWS § 750.145c(4); (4) using a computer to commit a felony with maximum imprisonment of four to ten years, MICH. COMP. LAWS § 732.797(3)(d); and (5) being a fourth felony offender, MICH. COMP. LAWS § 769.12. In exchange for dismissal of the remaining counts, Petitioner pleaded guilty on August 23, 2010 to count four.

The charges arose out of separate criminal conduct that occurred on August 13, 2008. On that date, Mary Ann Buzzitta filed a police complaint alleging that Petitioner had assaulted and abducted her after an act of prostitution. According to the report, Petitioner came to Buzzitta's apartment as part of a bi-monthly prostitution arrangement. Buzzitta said that Petitioner offered her extra money if she agreed to be restrained to the bed with chains and padlocks. She agreed. After binding her, Petitioner covered Buzzitta's mouth with duct tape, something Buzzitta had not agreed to. When Buzzitta began to struggle, Petitioner struck her in the side of the face with his fist and went to another bedroom and retrieved a small, gray pistol that Buzzitta kept. Petitioner held the gun in his hand during the sex act. Afterward, holding a folding knife against her ribs, Petitioner led Buzzitta to his car and transported her to the Clarksville exit of I-96, where he originally planned

to leave her. He subsequently drove her home, but threatened to shoot her if she called the police. (8/13/08 Police Report, docket #1-1, Page ID#155.)[1]

On September 8, 2008, police obtained a search warrant for Petitioner's home, which authorized a search for and seizure of a small gray/black pistol. (9/8/08 Warrant, docket #1-1, Page ID#147.) During the course of their search, officers found a red three-ring binder. When the officer opened the binder to look for the gun, he saw a page protector with what appeared to be child pornography printed from the internet. The officers also noted the presence of a Compaq computer and Epson printer. Based on this information, the officers sought and obtained a warrant on September 9, 2008 to search for physical evidence, including the computer and the binder, connecting Petitioner to the crime of possessing or creating child sexually abusive material. (9/9/08 Warrant and Aff. in Supp., docket #1-1, Page ID#139-42.) The search warrant return listed three notebooks taken from under the bed in the southwest bedroom and the Compaq computer from the dining room. (Warrant Return, Page ID#168.) After the computer was taken into evidence, a search of computer files revealed dozens of photographs of minors in sexual situations. (List of data files, Page ID##66-114.) In addition, a number of fingerprints belonging to Petitioner were found on the plastic sleeves covering the printed child sexually abusive materials. (Prelim. Exam Tr., Page ID#121.)

Petitioner's first trial attorney represented him at the preliminary examination, held May 20, 2009. During the preliminary examination, counsel moved to suppress the evidence on the ground that the evidence of child sexually abusive materials contained in the red binder was outside

---

[1] Based on these facts, Petitioner was charged and, following a jury trial, convicted of unlawful imprisonment, MICH. COMP. LAWS § 750.349b, and first-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520b(1)(e). On July 16, 2009, Petitioner was sentenced as a fourth habitual offender, MICH. COMP. LAWS § 769.12, to respective prison terms of 15 to 30 years and 26 to 40 years.

the scope of the first search warrant for the gun. The court held that, as a factual matter, a binder was of sufficient size to have concealed a gun. As a consequence, the opening of the binder did not exceed the scope of the first search warrant. (*Id.*, Page ID#121.) Following the preliminary examination, Petitioner was bound over for trial. Defense counsel filed a motion for discovery on June 2, 2009. (Cir. Ct. Docket Sheet, Page ID#130.) Shortly thereafter, on June 9, 2009, Petitioner attempted to file a *pro se* motion to suppress, which was denied on June 10, 2009 because Petitioner was represented by counsel and therefore not permitted to file *pro se* motions. (*Id.*) On July 17, 2009, defense counsel moved to withdraw from the case. (*Id.*) After a hearing held August 14, 2009, the motion was granted and a new attorney was appointed. (*Id.*) On September 1, 2009, Petitioner rejected a plea agreement, and the case was set for trial. On September 25, 2009, newly appointed counsel filed a second motion for discovery, delineating what already had been received and what remained outstanding. (*Id.*, Page ID#132; Mot. for Discovery, Page ID##180-81.) That same date, counsel also filed a demand for the preliminary examination transcript and a motion to extend the time for motions. (*Id.*, Page ID#132.) The motion was adjourned multiple times between October 23, 2009 and March 2010. At a hearing on March 4, 2010, the court issued an order allowing Petitioner's expert to inspect the computer consistent with a Contraband Court Order. (*Id.*, Page ID##133-34; Stip. & Ord. Mar. 4, 2010, Page ID#64; Contraband Ct. Ord., Page ID##61-62.) Thereafter, on July 15, 2009, defense counsel filed a motion to compel access to the computer by Petitioner's expert. (Mot. to Compel, Page ID##56-57.) The court granted the motion to compel, directing inspection of the computer during the week of August 2, 2010. (7/27/10 Cir. Ct. Ord., Page ID#151.)

On August 23, 2010, the date set for trial, Petitioner pleaded guilty to Count 4, and the remaining three charges were dismissed. (*Id.*, Page ID#133; Plea Tr., Page ID#125-26.) On September 9, 2010, Petitioner filed a motion to suppress evidence, a motion to represent himself, and a motion to withdraw his plea. Defense counsel filed objections to the presentence report and guidelines scoring. On September 29, 2010, the date scheduled for sentencing, the court granted Petitioner's motion to represent himself and dismissed his attorney. The court also denied Petitioner's motion to withdraw his plea and his motion to suppress. The court then sentenced Petitioner to a prison term of three years and two months to seven years. (*See* Cir. Ct. Docket Sheet, Page ID##135-36.)

Petitioner filed a notice of appeal, and the State Appellate Defender's Office was appointed as counsel on October 11, 2010. (*Id.*) According to the brief in support of the habeas petition, appellate counsel advised Petitioner to dismiss his appeal based on a lack of appellate issues and the favorable plea agreement. Petitioner signed an affidavit in support of the withdrawal of appellate counsel and the dismissal of the appeal. Counsel then forwarded Petitioner the transcripts. After reviewing the documents, Petitioner filed a delayed application for leave to appeal raising the same three issues presented in his habeas petition:

    I.    THE SEARCH WARRANT HAS THE WRONG ADDRESS AND THE WRONG DISCRIPTION [SIC] OF THE RESIDENCE, EVIDENCE TAKEN OUTSIDE THE SCOPE OF THE WARRANT, FALSE STATEMENTS TO OBTAIN A SEARCH WARRANT. MR. MILLER IS ENTITLED TO A NEW TRIAL.

    II.    PROSECUTION MISCONDUCT BY NOT ALLOWING MR. MILLER'S EXPERT WITNESS TO EXAMINE THE COMPUTER, BY WITH HOLDING DISCOVERY REQUEST. MR. MILLER IS ENTITLED TO A NEW TRIAL.

> III. INEFFECTIVE ASSISTANCE OF COUNSEL BY ALLOWING THE PROSECUTION TO NOT COMPLY WITH A COURT ORDER, BY NOT DILIGENTLY GETTING DISCOVERY SO THAT COUNSEL COULD REPRESENT MILLER TO HIS FULLEST. MR. MILLER IS ENTITLED TO A NEW TRIAL.

(Br. in Supp. of Pet., docket #1, Page ID#14.) On October 13, 2011, the court of appeals denied leave to appeal for lack of merit in the grounds presented. Petitioner sought leave to appeal the same issues to the Michigan Supreme Court, which denied leave to appeal on March 5, 2012. Petitioner filed the instant habeas petition on or about April 12, 2012.[2]

**Discussion**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). Where, as

---

[2]Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner dated his application on April 12, 2012, and it was received by the Court on April 16, 2012. Thus, it must have been handed to prison officials for mailing at some time between April 12 and 16. For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

here, the state appellate court has issued a summary affirmance, it is presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington v. Richter*, 131 S. Ct. 770, 784 (2011).

Petitioner pleaded guilty to the offense in issue. It has long been the case that a valid guilty plea bars habeas review of most non-jurisdictional claims alleging antecedent violations of constitutional rights. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Among claims not barred are those that challenge "the very power of the State to bring the defendant into court to answer the charge against him," *Blackledge v. Perry*, 417 U.S. 21, 30 (1974), and those that challenge the validity of the guilty plea itself. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985); *Haring v. Prosise*, 462 U.S. 306, 320 (1983); *Tollett*, 411 U.S. at 267. A plea not voluntarily and intelligently made has been obtained in violation of due process and is void. *See McCarthy v. United States*, 394 U.S. 459, 466 (1969). Petitioner's claims do not challenge the power of the state to bring him into court. Thus, the only means available for challenging his conviction is to claim that his plea is invalid, i.e., it was not knowingly and voluntarily entered into. *See Mabry v. Johnson*, 467 U.S. 504, 508 (1984) ("It is well-settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked.").

A constitutionally valid guilty plea has several requirements. The defendant pleading guilty must be competent, *see Brady v. United States*, 397 U.S. 742, 756 (1970), and must have notice of the nature of the charges against him, *see Henderson v. Morgan*, 426 U.S. 637, 645 n.13 (1976); *Smith v. O'Grady*, 312 U.S. 329, 334 (1941). The plea must be entered "voluntarily," i.e., not be the product of "actual or threatened physical harm, or . . . mental coercion overbearing the will of the defendant" or of state-induced emotions so intense that the defendant was rendered

unable to weigh rationally his options with the help of counsel. *Brady*, 397 U.S. at 750; *Machibroda v. United States*, 368 U.S. 487, 493 (1962) ("A guilty plea, if induced by promises or threats which deprive it of the character of a voluntary act, is void."). The defendant must also understand the consequences of his plea, including the nature of the constitutional protection he is waiving. *Henderson*, 426 U.S. at 645 n.13; *Brady*, 397 U.S. at 755; *Machibroda*, 368 U.S. at 493 ("Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences.") (internal quotations and citation omitted). Finally, the defendant must have available the advice of competent counsel. *Tollett*, 411 U.S. at 267-68; *Brady*, 397 U.S. at 756; *McMann v. Richardson*, 397 U.S. 759, 771 & n.14 (1970). The advice of competent counsel exists as a safeguard to ensure that pleas are voluntarily and intelligently made. *Cf. Henderson*, 426 U.S. at 647 ("[I]t may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit."); *Brady*, 397 U.S. at 754 (suggesting that coercive actions on the part of the state could be dissipated by counsel).

Petitioner, however, makes no claim that his plea was not knowing, intelligent or voluntary. He does not contend that his plea was coerced. Instead, Petitioner merely argues that certain matters preceding his decision to plead guilty should have been pursued or resolved differently. As the Supreme Court noted in *Tollett*:

> A guilty plea, voluntarily and intelligently entered, may not be vacated because the defendant was not advised of every conceivable constitutional plea in abatement he might have to the charge, no matter how peripheral such a plea might be to the normal focus of counsel's inquiry. And just as it is not sufficient for the criminal defendant seeking to set aside such a plea to show that his counsel in retrospect may not have correctly appraised the constitutional significance of certain

> historical facts, *McMann*, *supra*, it is likewise not sufficient that he show that if counsel had pursued a certain factual inquiry such a pursuit would have uncovered a possible constitutional infirmity in the proceedings.

411 U.S. at 267. Because Petitioner fails entirely to allege that his plea was involuntary or unknowing, he cannot demonstrate entitlement to habeas relief.[3]

Moreover, even if Petitioner's claims were not barred by the entry of his guilty plea, all of those claims are either meritless or noncognizable on habeas review.

### A. Search Warrant

In his first habeas ground, Petitioner contends that the search warrant was defective in its description of Petitioner's residence, because it listed Petitioner's address as a single-family dwelling, despite the fact that it was one apartment in a multi-residence building. He also contends that the affidavit in support of the search warrant contained false statements. In addition, he suggests that the police officers exceeded the scope of the first search warrant, leading to their discovery of the contents of the red binder, which in turn supported their second search warrant. He therefore argues that the items seized in the second search should have been rejected as inadmissible.

Petitioner's claim is barred by the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976); *see also Queen v. Scroggy*, 99 F.3d 1302, 1332 (6th Cir. 1996) (noting that it is well-settled that *Stone v. Powell* bars Fourth Amendment claims). In *Stone v. Powell*, the Supreme Court held that

---

[3] Petitioner's decision not to challenge his plea as unknowing and involuntary undoubtedly arises from the content of his own responses to the trial court's inquiry at the plea hearing. Petitioner has not provided the full plea hearing transcript. Instead, he attached to his petition only the first five pages of the transcript. Nevertheless, even in the course of the few pages submitted, Petitioner stated that he wished to plead guilty, acknowledged that he was a high-school graduate, that he understood the proceedings, that he understood the nature of the charge, and that he understood the full content of the plea agreement, including the fact that his sentence could not exceed seven years. It is equally apparent that the trial court engaged in a full inquiry of Petitioner's understanding of all of the rights being waived. Moreover, inasmuch as the Michigan Court of Appeals affirmed the conviction on the merits, Petitioner was required to do more than raise a question of voluntariness. He was required to demonstrate that the state-court's determination constituted an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d). Petitioner has wholly failed to meet his burden.

federal habeas review is not available to a state prisoner alleging that his conviction rests on evidence obtained through an unconstitutional search or seizure, as long as the state has given the petitioner a full and fair opportunity to litigate the Fourth Amendment claim. *Id.*; *see also Rashad v. Lafler*, No. 09-2371, slip op. at 7 (6th Cir. Apr. 5, 2012).

In order for the rule of *Stone v. Powell* to apply, the state must have provided, in the abstract, a mechanism by which to raise the Fourth Amendment claim, and the presentation of the claim in the case before the court must not have been frustrated by failure of that mechanism. *See Gilbert v. Parke*, 763 F.2d 821, 823 (6th Cir. 1985). If these two inquiries are satisfied, federal habeas review of the Fourth Amendment claim is precluded, even if the federal court deems the state-court determination of the claim to have been in error. *Id.* at 824; *accord Jennings v. Rees*, 800 F.2d 72 (6th Cir. 1986); *Markham v. Smith*, 10 F. App'x 323, 326 (6th Cir. 2001).

In the present case, Petitioner cannot satisfy either prong of the *Stone v. Powell* standard. First, it is beyond dispute that Michigan has a state procedural mechanism that presents a defendant a full opportunity to raise a Fourth Amendment claim before trial. Even before the United States Supreme Court decided that the federal exclusionary rule applied to state criminal proceedings, the Michigan courts applied the exclusionary rule to the fruits of unconstitutional searches and seizures. *See People v. Margelis*, 186 N.W. 488 (Mich. 1922). After *Mapp v. Ohio*, 367 U.S. 643 (1961), the Michigan courts consistently have acknowledged their duty, under both the federal and state constitutions, to suppress evidence seized in violation of the Fourth Amendment. *See, e.g., People v. David*, 326 N.W.2d 485, 488 (Mich. Ct. App. 1982). Consequently, Michigan affords criminal defendants a vehicle by which to raise Fourth Amendment challenges.

Second, to satisfy the remaining prong of *Stone v. Powell*, Petitioner must allege facts showing that the state corrective mechanism has somehow broken down. *See, e.g., Agee v. White*, 809 F.2d 1487, 1490 (11th Cir. 1987) (habeas review not barred when state appellate court completely ignored Fourth Amendment claim). The Sixth Circuit pointedly has held that the doctrine of *Stone v. Powell* applies, even if the federal court deems the state-court determination of the Fourth Amendment claim to have been in "egregious error." *Gilbert v. Parke*, 763 F.2d at 824 (citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

Petitioner has not alleged any facts showing that the state's mechanism has broken down. Rather, it is clear that the Michigan courts gave Petitioner's Fourth Amendment claim full and proper consideration. Petitioner has attached to his petition the transcript of the preliminary examination on the motion to suppress evidence. The transcript demonstrates that the district court fully and thoughtfully considered Petitioner's motion to suppress. The Michigan Court of Appeals reviewed Petitioner's application for leave to appeal and determined that it lacked merit. Petitioner applied for leave to appeal to the Michigan Supreme Court, which denied his application. Therefore, even if this Court were to disagree with the determination of the Michigan courts, that disagreement would be insufficient to satisfy the second prong of the Sixth Circuit standard. *Gilbert*, 763 F.2d at 824.

Because Petitioner has failed to demonstrate either prong of *Stone v. Powell*, his claim of illegal search and seizure is barred on habeas review.

### B. Prosecutorial Misconduct

Petitioner next argues that the failure of the prosecution to provide Plaintiff's expert access to the computer's hard drive amounted to prosecutorial misconduct. As previously discussed,

-11-

Petitioner's original counsel sought discovery, and his substitute attorney filed a motion for further discovery. On March 4, 2010, the state court ordered the prosecution to provide the expert with access to the computer to inspect the files identified as containing child sexually abusive materials. (Page ID#64.) When the opportunity for inspection subsequently was not provided, defense counsel moved to compel the inspection and the court ordered that inspection during the week of August 2, 2010. (Page ID##56-57, 151.)

In order to demonstrate that a prosecutor committed discovery misconduct violating the Due Process Clause, Petitioner must show that the state failed to disclose exculpatory evidence to the defense. *See Brady v. Maryland*, 373 U.S. 83(1963). In order to establish a *Brady* claim, Petitioner must demonstrate that: (1) evidence was suppressed by the prosecution in that it was not known to petitioner and not available from another source; (2) the evidence was favorable or exculpatory; and (3) the evidence was material to the question of petitioner's guilt. *See Strickler v. Greene*, 527 U.S. 263, 281-82 (1999); *Carter v. Bell*, 218 F.3d 581, 601 (6th Cir. 2000); *see also Moore v. Illinois*, 408 U.S. 786, 794-95 (1972). Petitioner bears the burden of establishing each of these three elements. *See Carter*, 218 F.3d at 601.

Petitioner fails even to identify the constitutional question, much less to allege facts supporting any of the three *Brady* elements. Petitioner provides no evidence that the prosecution actually suppressed defense access to the computer. Although defense counsel admittedly was delayed in obtaining the information, nothing in the record indicates that the prosecutor did not comply with the court's July 27, 2010 order to allow inspection during the week of August 2, 2010, more than three weeks before the date set for trial, at which Petitioner pleaded guilty. In addition, Petitioner does not allege that any information on the computer was exculpatory or favorable or that

it was material to his case. Accordingly, Petitioner wholly fails to demonstrate prosecutorial misconduct with regard to the suppression of evidence.

### C. Ineffective Assistance

Petitioner's final claim of ineffective assistance of counsel is based on two assertions: (1) counsel did not meet with Petitioner for eight months and did not allow Petitioner to examine all evidence before he pleaded guilty; and (2) counsel permitted the prosecution to refuse to provide discovery material. In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the prejudice prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59.

When a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential. *Richter*, 131 S. Ct. at 788 (citing *Knowles v. Mirzayance*, 129 S. Ct. 1411, 1420 (2009)); *Premo v. Moore*, 131 S. Ct. 733, 740 (2011). In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

Petitioner wholly fails to demonstrate either prong of the *Strickland/Hill* standard. With respect to the performance prong, during the entire period of his representation, defense counsel engaged in vigorous representation of Petitioner. Counsel filed a second motion for discovery, which carefully delineated what had been originally requested, what had been provided, and what remaining discovery was sought. After obtaining an order granting discovery, counsel moved to compel that discovery, again prevailing on his motion. In addition, counsel engaged a computer expert to examine the electronic evidence upon which the prosecution relied and to rebut the prosecution's expert. Finally, counsel negotiated a plea agreement under which Petitioner was permitted to plead to an offense with a maximum sentence of seven years, in exchange for the

dismissal of three other counts that could have exposed Petitioner to substantially longer maximum terms of imprisonment. Nothing about this history undermines the presumption that counsel rendered fully competent assistance during the pretrial stages or in recommending that Petitioner plead guilty to the lesser offense.

With respect to the prejudice prong of *Strickland/Hill*, Petitioner at no time represents that he would have refused the plea offer if counsel had done anything differently. He therefore fails even to allege the requisite prejudice under *Hill*, 474 U.S. at 59.

For both reasons, Petitioner fails to demonstrate that the state courts unreasonably rejected his claim of ineffective assistance of counsel. *See Richter*, 131 S. Ct. at 788.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v.*

*Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated: __May 3, 2012__          /s/ Janet T. Neff
                                Janet T. Neff
                                United States District Judge